State *v.* Alstead.

---

## THE STATE *v.* ALSTEAD.

The record of the laying out of a road by the selectmen may, although it does not show a compliance with some of the legal conditions, after the lapse of nearly forty years, be left to the jury, with instructions allowing them to presume that the necessary conditions were complied with, and that the doings of the selectmen were regular.

Whether, after a road has been laid out, there may be an abandonment of it by the mere non-user, so as to exempt the town from the duty of keeping it in repair, *quære.*

Such abandonment is inconsistent with the evidence of its having often been used during the interval, and repaired by individuals, although movable bars have been kept during parts of each year, and a wall, within five years, built across it, by a land proprietor.

The testimony of one that he has acted as highway surveyer, and, in the execution of his warrant, caused a road to be repaired, is not evidence of such a road having been laid as a public highway, in the absence of proof that it was indeed within his district, and the warrant, not having been produced, or accounted for.

INFORMATION. The first count alleged that the town neglected to keep in repair a certain road; and the second count, that the town neglected to build it.

To prove that the road was laid out, the attorney-general offered in evidence a copy from the records of the town of Alstead, as follows:

"Laid out a road, four rods wide, from Gilsum line to Ebenezer Crane's, beginning at Gilsum line, at a beach tree," &c., (describing the road) "to the east meeting-house in Alstead, by Ebenezer Crane's. Laid out by us, this fifteenth day of June, 1807.

LEONARD MORSE,   ⎱ *Selectmen.*
CYRUS KINGSBURY, ⎰

Recorded by JAMES H. BINGHAM, town-clerk."

To the admission of this copy in evidence the counsel for the town objected, because —

1. There was no evidence of any application to the selectmen to lay out the road.

2. It did not appear that the land owners were notified.

3. It did not appear that any damages were awarded to the land owners.

4. It did not appear whether the road was laid out for the accommodation of the public or of individuals.

The attorney-general also produced a copy from the records of the town, from which it appeared that the twelfth article in the warrant for the annual meeting in March, 1845, was as follows:

"To see if the town will vote to open the old road,

commencing near Alden S. Thurston's, and terminating near the house of Franklin Crane, and act thereon."

" *Voted*, To open the old road, commencing near Alden S. Thurston's, and terminating near the house of Franklin Crane, and that the selectmen may make such alterations as they think proper."

To the admission of this evidence the counsel for the town objected.

The town admitted, that from Gilsum line to Thurston's the road had been opened and used for many years by the public, and admitted their liability to keep it in repair, but denied that from Thurston's to Crane's it had ever been opened, or made at all by the town, or had been used by the public.   The attorney-general then offered evidence tending to prove that it had been used and traveled with vehicles of different descriptions repeatedly within the last twenty years, and presented the appearance of having been worked.   It also appeared that bars or gates had been kept up at several places across the road from Crane's to Thurston's, during the summer, by the owners of the land on the side of the road, for twenty-five years past.   The attorney-general also offered a witness, who testified that within nine years he had worked on the road from Thurston's to Kingsbury's, acting as a highway surveyor, and that he had a warrant, which he returned to the selectmen, after having caused the taxes to be worked out, with the taxes thereon crossed.   The warrant was not produced, and it did not appear whether this road was included or not in the district of which the witness was the surveyor.   There was also the testimony of another witness, that he had worked on the road from Read's to Thurston's, acting as a surveyor, and had returned his warrant to the selectmen about thirty-eight or forty years ago, and about two or three years afterwards, but the warrant was not produced, and it did not appear whether the road was within the highway district of the witness.

The counsel for the defendant then introduced a witness, Ebenezer Crane, who testified that no work, to his knowledge, was ever done on the road by the town authorities, but that his neighbors used occasionally to work on the road and fill up the slough holes; that the bars by his house were kept up across the road always except in winter, and that he erected them before the road was laid out; that, at Thurston's and Kingsbury's, bars had been kept across the road for forty years, and that the object of having bars there was to accommodate the neighbors, who might desire to use the road; that the road was never worked, to his knowledge, from Thurston's to his house, or to Read's, and that, about five years ago, the bars, which were across the road by his house, were removed, and the wall was so built as to extend across the road in place of the bars.

The counsel for the town contended, that even if the evidence proved that the road was ever laid out, an omission, by the town, since the year 1807, to build the road, would show that the public had abandoned all right to the road; and he offered the last mentioned witness to prove such an omission, and he contended that, after such an omission, the town would not be liable to maintain the road.

If, in the opinion of the court, the public can lose their right to the road, and the town can be relieved from liability to maintain the road, by an omission by the town to build it, the case is to stand for trial at the next term, provided the evidence offered by the attorney-general be competent to prove the liability of the town to maintain the road from Crane's to Thurston's, or any part thereof. If the town cannot be relieved from liability in this manner, and the evidence offered for the prosecution be competent, the town is to be fined. If the evidence offered for the prosecution be incompetent, a *nolle prosequi* is to be entered.

State *v.* Alstead.

*Vose,* for the defendants. The evidence in the case does not show a road established within any of the forms mentioned in *The State* v. *New-Boston,* 11 N. H. Rep. 407.

Selectmen have only ministerial powers, and if they do not pursue the forms of law their acts are void. 3 N. H. Rep. 337; 6 N. H. Rep. 525.

The act of February 8, 1791, Laws of N. H. 385, authorizing selectmen to lay out highways upon the application of individuals, was not repealed till 1829. They could not lay out a road without such petition, and there is none proved here. *Pritchard* v. *Atkinson,* 3 N. H. Rep. 335; *Hayes* v. *Shackford,* 3 N. H. Rep. 10. Their doings must be in writing, and lodged with the clerk. 2 N. H. Rep. 309, 338. The record here is uncertain and defective.

Towns cannot lay out roads. 10 N. H. Rep. 137; 2 Pick. 51. Beside, the work done on the supposed road was not done by authority of the town. The warrants which should have shown it were not produced.

*Hubbard,* for the State. Lapse of time justifies the presumption that every thing was done that was necessary.

GILCHRIST, J. There is no doubt that the record of the laying out of the road described in the indictment is defective in many particulars, and perhaps in all that are specified in the case; and if it were a recent transaction these defects would be fatal to it, as evidence of the legal existence of the road.

But in transactions so ancient that the means of proving the exact state of the facts may fairly be presumed to have been lost, through the death of those who participated in them, and whose duties required them to know the whole truth; or, through the loss of the memory of them, on the part of such persons, if living, so that the

ordinary remedy of the defect, by an amendment of the record, has become impracticable, a presumption is established in favor of the correctness of the proceedings, so imperfectly recorded; and the record, defective as it is, may be submitted to the jury, with instructions that enable them to find from it all the particular facts which it does not specifically attest, that are requisite for the validity of the principal one, which is sought to be established in evidence. *Bishop* v. *Cone,* 3 N. H. Rep. 515; *Cavis* v. *Robertson,* 9 N. H. Rep. 527.

According to the doctrine of those cases, therefore, the record, which was offered in evidence, under a date so distant as 1807, thirty-nine years before the trial, might well have been submitted as evidence that the laying out of the road, which was returned and recorded with due legal formality, was authorized by the prior application, adjudged in the case of *Pritchard* v. *Atkinson,* 3 N. H. Rep. 337, to be necessary to enable the selectmen to act at all; that the land owners received the notice, without which it is not usual, and it would not have been legal for the selectmen to encumber their land with the public servitude of a highway; that a suitable and satisfactory compensation in damages was awarded to them, and that the road was for the public use, since the record contains no intimation to the contrary, if, indeed, it is material whether it were for the one or the other. *Metcalf* v. *Bingham,* 3 N. H. Rep. 459.

If there had been competent evidence that highway surveyors, in the execution of the warrants committed to them, had been accustomed, soon after the supposed laying out of the road, to work upon it, the effect of such doings, in the way of confirming the presumption allowed in favor of the validity of that act, would have come fairly before the court. But the evidence wholly fails to prove such facts. It was not proved that the road was within the district of either of the surveyors whose doings were

State *v.* Alstead.

offered in evidence, and the warrants themselves — the proper evidence of what they did — were not produced or accounted for. The question is therefore open, whether any presumption whatever exists that highway surveyors, in the exercise of their offices, confine themselves to roads legally established, and whether a question as to the validity of an ancient act, imperfectly recorded, may derive any reliable light from the fact that such functionaries as highway surveyors regard it as valid.

What evidence, if any, would suffice to show an abandonment by the public, of their rights in a road, laid out and constructed for use, or their right to require a road, legally laid out, to be constructed and rendered fit for use, it is not necessary to determine. Towns have long possessed the power, by vote, with the condition of obtaining, in some instances, the permission of the court for the purpose, to relieve the land of proprietors from such a burden, and no other way is pointed out by which such relief can be obtained. Whether, after a sufficient period, during which the public easement has not been enjoyed, but, on the contrary, the owner has excluded travelers, by effective barriers, from passing over his soil, and, by open and notorious acts, claimed a total exemption from the servitude, a jury might be authorized to presume that the road had been regularly discontinued, this case does not render it necessary to determine, since it does not furnish the evidence of such a state of facts.

The evidence here is, that the road has, within twenty years, been repeatedly traveled with vehicles of different descriptions, and has presented the appearance of having been worked. The road appears, by the testimony of the surveyors, to have been worked, at sundry times, since the supposed laying out, and Crane's testimony is to the same effect.

For such a question, it seems immaterial whether the work was done by individuals voluntarily contributing to

the expense, or by surveyors, in the course of their public ministrations; since the act of repairing the road seems to be as effectual to rebut the evidence of a non-user, as the act of traveling upon it would be; and the force of the evidence, in this respect, consists in the cumulated facts of a nature to indicate that people persisted in treating it as they treat a way which has been devoted to their use.

This is not a case in which it is necessary to prove a dedication of the road to the public, by the proprietors over whose land its course lies. It is a question, whether there has been an abandonment, by the public, of the rights, once acquired by the laying out of the road, by proceedings supposed to have been valid in law for that effect.

The acts of those proprietors, therefore, or the acts of others against such public right, and having an aspect of asserting an exemption from it, such as encumbering the road during certain seasons of the year, and obstructing, by means of bars, gates, and fences, the free use of it by the public, must not be regarded, since they did not, for a great length of time, amount to an effectual exclusion of the public, as being any thing more than as aggressions. They were submitted to in a degree, but this was because they were attended with no other effect than that of rendering the use of the road difficult, and not of wholly suspending it.

The case is, therefore, one for the jury to inquire upon the evidence furnished by the record, whether the road was legally established, and if so, to settle such other questions of fact as, in that event, may be pertinent.

According to the agreement, the case must stand for trial.

# SULLIVAN.

## JULY TERM, A. D. 1846.